WILLIAM WALLACE *et al.*

*v.*

MARY REDDICK *et al.*

*Filed at Springfield October 6, 1886.*

1.  ADVANCEMENT—*defined.*  An advancement is a giving by a parent to a child or heir, by way of anticipation, of the whole or a part of what is supposed the donee will be entitled to on the death of the party making it.

2.  SAME—*whether a gift to be considered an advancement—intention of donor, how to be shown—before and since the act of 1872.*  Prior to the act of 1872, whether a gift by a parent to a child was to be deemed an advancement, depended upon the intention of the donor, to be gathered from the attending circumstances.

3.  If the subsequent verbal declarations of an intestate ancestor are admissible at all to show his intention in making conveyances to his sons was to make advancements, yet if they were made to persons having no interest in the subject matter, and are reproduced long after his death, they will be regarded as a most unsatisfactory class of evidence.

4.  The proof, merely, of gifts of land by a father to a son, even prior to the act of 1872, is not alone sufficient to show they were intended as advancements.

5.  And in cases of intestacy since the act of 1872 went into effect, gifts or grants made by the intestate to any of his children will not be regarded as advancements unless they are so expressed in writing, or charged as such by him, or acknowledged in writing by such children.

6.  SAME—*effect of act of 1872 as to prior gifts.*  The act of 1872, relating to advancements, applies to advancements made prior to its enactment, in cases of subsequent distribution.

APPEAL from the Circuit Court of DeWitt county ; the Hon. LYMAN LACEY, Judge, presiding.

Mr. R. A. LEMON, and Messrs. MOORE & WARNER, for the appellants :

While under the statutes of some of the States a gift by a parent to a child is presumed to be an advancement, under the statute of this State such presumption does not arise ; but on the contrary, before such a gift could be charged as

an advancement, prior to the act of 1872, it was necessary to affirmatively show that it had been charged by the ancestor as such, and since the act of 1872 it is necessary, in order to give the gift the character of an advancement, to show that it is expressed or charged as such, in writing, by the intestate, or acknowledged, in writing, as such, by the recipient. Stats. 1833 and 1839, chap. on "Wills," sec. 123; Rev. Stat. 1845, chap. 109, sec. 128; Rev. Stat. 1874, chap. 39, sec. 7; *Bishop* v. *Davenport,* 58 Ill. 105; *Bulkeley* v. *Noble,* 2 Pick. 337; *Ashley, appellant,* 4 id. 21; *Bullard* v. *Bullard,* 5 id. 527; *Hall* v. *Davis,* 3 id. 450.

The declarations or admissions of a grantor, after the execution of a deed, are inadmissible to prejudice the grantee, and even in those States in which a gift by a parent to a child is presumed to be an advancement, it is necessary to affirmatively show it before the presumption can attach that the conveyance or transfer was a gift in fact; and the declarations or admissions of the ancestor, made out of the hearing of the person to whom, and after, the conveyance or transfer was made, are not competent to show its character, or to show that a deed which recites that it was made for a valuable pecuniary consideration, was in fact simply made as an advancement. *Rust* v. *Mansfield,* 25 Ill. 336; *Myers* v. *Kinzie,* 26 id. 36; *Bennett* v. *Stout,* 98 id. 47; *Simpkins* v. *Rogers,* 15 id. 398; *Hessing* v. *McCloskey,* 37 id. 341; *Dunaway* v. *School Directors,* 40 id. 247; *Hatch* v. *Straight,* 3 Conn. 31; *Bulkeley* v. *Noble,* 2 Pick. 337; *Arnold* v. *Barrow,* 2 P. & H. (Va.) 1; *Yundt's Appeal,* 13 Pa. St. 575; *Bunker* v. *Green,* 48 Ill. 243.

Loose declarations by a parent, not made to a child, nor assented to by the latter, are not sufficient to prove advancements, where the statute does not prescribe the evidence necessary to establish an advancement. *Haverstock* v. *Sarbach,* 1 W. & S. 390; *Porter* v. *Allen,* 3 Barr, 390; *Yundt's Appeal,* 13 Pa. St. 575; *Dudley* v. *Bosworth,* 10 Hunt. 9; *Hartwell* v.

*Rice,* 1 Gray, 587; *Rumbley* v. *Stanton,* 24 Ala. 712; *Arnold* v. *Barrow,* 2 P. & H. (Va.) 1.

The statute in relation to advancements in force at the time of the death of the grantor, Col. Wallace, governs the decision of this case. *Simpson* v. *Simpson,* 114 Ill. 603.

Mr. JOHN T. LILLARD, and Messrs. FULLER & MONSON, for the appellees:

In this State a gift to a child, made in the lifetime of the intestate, is *prima facie* an advancement, if made prior to the act of 1872. *Grattan* v. *Grattan,* 18 Ill. 170; *Cartwright* v. *Wise,* 14 id. 417; *Bay* v. *Cook,* 31 id. 336; *Fleming* v. *Donahoe,* 5 Ham. (Ohio,) 253; *Dutch's Appeal,* 57 Pa. St. 461; *Storey's Appeal,* 83 id. 95.

The great weight of authority is, that the declarations and statements of an intestate are competent to show that gifts from him to his children were advancements. *Cline* v. *Jones,* 111 Ill. 563; *Speer* v. *Speer,* 14 N. J. Eq. 240; *Dutch's Appeal,* 57 Pa. St. 461; *Woolery* v. *Woolery,* 29 Ind. 254; *Watkins* v. *Young,* 31 Gratt. 84; *Meeker* v. *Meeker,* 16 Conn. 383; *Galbraith* v. *McLain,* 84 Ill. 379; *Kershaw* v. *Kershaw,* 102 id. 507.

The advancements in this case are proved, not only by the declarations of Col. Wallace, the intestate, but by the deeds themselves, showing on their face that the consideration was love and affection, and nominal considerations; by the further fact that each son received about the same amount, and the daughters nothing, and other circumstances which will be more fully specified further on. Outside the statements of Col. Wallace, the facts and circumstances establish the advancements, according to the following cases: *Hatch* v. *Straight,* 3 Conn. 31; *Speer* v. *Speer,* 14 N. J. Eq. 240; *Parks* v. *Parks,* 19 Md. 323; *Dutch's Appeal,* 57 Pa. St. 461; *Cleaver* v. *Kirk's Heirs,* 3 Metc. 270.

The statute in force when the advancements were made, governs. *Hapgood* v. *Whitman,* 10 Mass. 437 ; *In re Fuller,* 79 Ill. 99 ; *Thompson* v. *Alexander,* 11 id. 54; *Bruce* v. *Schuyler,* 4 Gilm. 221 ; *Marsh* v. *Chestnut,* 14 Ill. 223 ; *Cline* v. *Jones,* 111 id. 563.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the Court :

Andrew. Wallace died intestate December 25, 1874, seized in fee simple of the lands described in the bill. Esther Wallace, his widow, survived him, but has since departed this life, so that the lands of which the intestate died seized have descended to his heirs-at-law as an absolute and unincumbered estate. There were seven children—four daughters and three sons—born unto the intestate, some of whom died before his death occurred. All of the sons and one daughter are now dead. The bill in this case was filed by the surviving daughters and the representatives of the deceased daughter, against the personal representatives of the deceased sons of the intestate, for the partition of the lands of which the intestate died seized. It is alleged, the intestate made no advancements to either of his daughters, but that he did make advancements to each of his sons, of lands particularly described, the value of which, it is charged, is far in excess of what the sons or their heirs should receive from his estate. The answer admits the death of the intestate, and that the heirs and the rights of the parties are correctly stated in the bill, except as to the matter of advancements. It is denied the sons of the intestate were advanced, and it is denied that any conveyance of land to the sons from their father was received by them as an advancement, or charged to them as such by their father. A general replication filed, put these material allegations of the answer at issue. On the final hearing, upon the evidence submitted, the circuit court found advancements had been made to two of the sons in excess of the share of the estate

of the intestate that they would otherwise have been entitled to; and as to the other son, it was found the advancement to him was not equal to his share in the estate, and for the deficit, provision was made in the decree, and the residue of the estate was directed to be divided among complainants according to their respective interests therein, as set forth in the bill.

It is seen, it is denied the conveyances of lands by the intestate and his wife to the ancestors of defendants were made as advancements, but it is asserted that each and every conveyance was made upon valuable considerations, and not in any manner or way as an advancement to the grantees named in the several deeds. It is upon these denials of the allegations of the bill in that respect that the whole controversy hinges. Questions of fact and law are therefore involved. The case naturally falls into two parts: First, whether any advancements were made to the ancestors of defendants, either in lands or other property, by the intestate; and second, can such advancements be charged against any interest defendants might otherwise have had in the lands sought to be partitioned.

As respects the first branch of the case, it is, of course, a question of fact whether any advancements of lands were made to either son; and concerning which the evidence is by no means either clear or satisfactory. Most of the deeds to the sons bear date back of 1856. One is dated March 9, 1842, two or three in 1850, and others still later, and one perhaps as late as 1861. It will be observed that in all of the deeds, except perhaps one, it is recited such deed was made upon a money consideration. In some instances the consideration is nearly or quite equal to the value of the land at that early date, but in others the consideration stated is evidently below the real value of the lands. There is nothing in the deeds, save the one, that indicates the conveyances were made either as gifts or advancements. Whether a gift

by a parent to the child was to be deemed an advancement, depended upon the intention of the donor. It seems to have been so held in all the decisions rendered in this State prior to the act of 1872 on the subject. What is an advancement? It is the giving by a parent to the child or heir, by way of anticipation, the whole or a part of what it is supposed the donee will be entitled to on the death of the party making it. The very act of making an advancement implies the exercise of judgment,—intention to do a thing that may have a future effect. In the making of a gift, no exercise of judgment as to results that may follow in the future is involved. It is therefore more accurate to say, that whether a gift is to be deemed an advancement, under the law as it was prior to the act of 1872, depended upon the intention of the party making it, to be gathered from the attending circumstances. As before stated, neither deed made by the intestate shows the land conveyed was intended as a mere gift, with the possible exception of one dated January 25, 1861, and it may be confidently stated, none of them show the land conveyed was intended as an advancement. Resort is had to subsequent verbal declarations to show the intention of the intestate ancestor in making the several conveyances to his sons. Most of the declarations proved were made to persons having no interest whatever in the subject matter of the conversations, and now, long years after they were uttered, and long since the death of the party making them, they are reproduced as testimony. If it be conceded such declarations are competent evidence, it is certainly a most unsatisfactory class of testimony.

It is proved the common ancestor made gifts of land to his sons, but it can hardly be said there is any satisfactory evidence he intended such gifts should be, in whole or in part, of what he supposed the donees would be entitled to out of his estate at his death. It appears, on the marriage of the daughters, small gifts were made to each of them, in property, or what was thought to be its equivalent in money. It was

never intended these gifts should be deemed advancements, nor were they ever charged to the daughters as such. It may be the intestate made gifts to his sons, both of money and land, much larger and more valuable than anything he bestowed upon his daughters. It is a matter well understood, that a belief existed in the common mind, as it had been incorporated in the constitutions of many peoples centuries ago, that the sons were entitled to "a double portion of the inheritance." Happily that doctrine has ceased to be regarded either as law or a rule of action, or even as common justice. Under that common understanding that had obtained over many minds the consistency of law, it may be the intestate made larger gifts to his sons than to his daughters, and intended to do so in accordance with his notions of justice, however erroneous that notion may have been, and with not the slightest intention to charge them with such gifts as advancements.

Taking the most probable view of the testimony, it establishes no very strong equities in favor of complainants, and certainly it is not shown by any testimony entitled to any great weight, even if admissible at all, that the intestate made gifts to his sons, by anticipation, of the whole or a part of what he supposed would be the share of the donees in his estate when it should be distributed among his heirs.

But the reversal of the present decree may be placed on a ground that seems to be unanswerable. It does not appear the gifts or grants it is claimed were made by the intestate to the ancestors of defendants were expressed or charged in writing to be advancements, nor were they so acknowledged in writing by the donees to be advancements. Section 7 of the act of 1872, in regard to the descent of property, declares : "No gift or grant shall be deemed to have been made as an advancement unless so expressed in writing, or charged in writing, by the intestate, as an advancement, or acknowledged in writing by the child or other descendant." In *Simpson* v.

*Simpson,* 114 Ill. 603, it was objected, this statute did not apply to the case then being considered, for the reason the advancements were made in 1855, which was long before the passing of the act; but it was distinctly ruled, this statute in relation to advancements applies to advancements made prior to its enactment, in case of subsequent distributions. It was then said : "No rights of the son's children, he being then living, were affected by the passage of the act, with its application to advancements theretofore made. Such children had then, in their father's lifetime, no rights to be affected." This whole matter of descent of property is within legislative control. Heirs apparent and prospective distributees, during the ancestor's lifetime, have no vested rights in his estate, nor in the laws of descent. Accordingly, it is held the application of a statute changing the rules of descent of property impairs no vested rights. This statute is not in terms made prospective in its operation. It seems to have been intended to apply to all advancements, no matter when made, for it is said, no gift or grant "shall be deemed to have been *made* in advancement" unless expressed, charged or acknowledged in writing. It was entirely competent for the legislature to so provide. The application of the statute to advancements heretofore made, impairs no vested rights of complainants. Recognizing, as must be done, the controlling authority of the doctrine of *Simpson* v. *Simpson, supra*, it is conclusive as to analogous questions in the case being considered. The gifts or grants alleged to have been made to the ancestors of defendants were never expressed or charged by the intestate as advancements, nor acknowledged by the donees as such, and the statute is imperative no such gift or grant shall be deemed an advancement unless so expressed, charged or acknowledged in writing.

The decree of the circuit court will be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

*Decree reversed.*