HOLLAND *v.* BONNER.

Opinion delivered February 16, 1920.

1. EVIDENCE—BURDEN OF PROOF.—The burden of proof is on the plaintiff to establish the allegations of her complaint.

2. DESCENT AND DISTRIBUTION—ADVANCEMENT.—Proof that a parent conveyed land worth from $6,000 to $8,000 for $500 *held* to make a *prima facie* case of advancement, to the extent at least of

the difference between the consideration expressed and the real value of the land conveyed.

3. DESCENT AND DISTRIBUTION—PREFERENCE OF ONE CHILD.—A parent has the right to make such disposition of his property as he pleases; hence the presumption that he will not give one child a greater portion of his property than another is not conclusive and may be rebutted.

4. DESCENT AND DISTRIBUTION—ADVANCEMENT—BURDEN OF PROOF.— Where land conveyed by a parent to a child for $500 was worth from $6,000 to $8,000, the grantee has the burden of proving that the conveyance was not an advancement.

5. DESCENT AND DISTRIBUTION—"ADVANCEMENT" DEFINED.—An "advancement" is a gift by a parent to a child in anticipation of what it is supposed the child will be entitled to on the death of the parent.

6. DESCENT AND DISTRIBUTION — ADVANCEMENT — INTENTION.— Whether a conveyance or transfer of money or property by a parent to a child is an advancement or a gift depends on the intention of the parent; and if it appears that he intended a gift, it will not be treated as an advancement.

7. DESCENT AND DISTRIBUTION — ADVANCEMENT.—Evidence *held* to show that a conveyance by a parent to a child was not an advancement.

Appeal from Randolph Chancery Court; *Lyman F. Reeder*, Chancellor; affirmed.

*W. L. Pope,* for appellant.

1. Kirby's Digest, sections 2650 to 2653, are evidently designed to enlarge the common law doctrine of advancements and to ascribe to the donor that intention most favorable to an equal distribution of his property among his children. Such has always been the doctrine of this court. 45 Ark. 481; 68 *Id.* 405; 69 *Id.* 629; 97 *Id.* 568.

2. When the difference between the price paid and the actual value of the property is apparent and great, the conveyance will be regarded as an advancement to the extent of that difference. 18 C. J. 921; 1 R. C. L. 668; 58 Ia. 55; 53 S. C. 350; 57 Ga. 520; 118 N. W. 374. Since it was proved and the court so found that the land was worth from $6,000 to $8,000 at the time the deed was

made, and since the deed itself expressed the consideration of love and affection, a presumption was at once raised that the excess in value was an advancement. 18 C. J., p. 920 (see 923); 1 R. C. L., p. 665, § 17. The intention of the intestate should prevail. Declarations .made prior to the advacement and statements made thereafter are admissible to show an advancement. 1 R. C. L., sec. 17; 4 Enc. of Ev., p. 610; 50 N. J. Eq. 577; 14 *Id.* 240. For the rules of evidence involved, see 4 Enc. of Ev., pp. 585 to 624. There is no testimony establishing a state of facts that a court of equity would enforce specific performance of a parol sale of land. 63 Ark. 106. Never did Mr. Armstrong do more than express an intention to some day deed Mrs. Bonner the land. There is an essential difference between an expressed intention to do a thing and an absolute undertaking to do it. 71 Ind. 288; 3 N. E. 516; 12 N. E. 295. In this case all the equities favor the appellant, and under the rule laid down in 68 Ark. 405 the various amounts received by Mrs. Bonner from her father in land, rents, sales of timber, etc., should be held as advancements, and the court erred in not so holding.

*E. G. Schoonover,* for appellee.

The findings of facts by the chancellor was upon conflicting evidence and the preponderance sustains his findings and should not be disturbed. 1 Michie's Dig., pp. 377-379; 82 Ark. 492. The testimony shows that the transaction was a sale of the land, and not an advancement.

Wood, J. Appellant instituted this action against the appellee in the chancery court of Randolph County.

The appellant alleged in her complaint in substance that A. O. Armstrong died in 1919, leaving his widow, M. E. Armstrong, and the appellant and the appellee, his only children and heirs at law; that he died seized of 565 acres of land; that before his death he purchased a certain eighty acres as a home for the appellee and allowed her to live upon the same for a number of years

without paying any rent and allowed her to sell valuable timber from the land but retained the title in himself and continued to pay the taxes thereon; that a short time before his death he deeded the land to the appellee as an advancement to her out of his estate, since which time appellee had continued to hold the land and enjoy the rents and profits therefrom. She alleged that she was entitled to one-half of the estate of her father subject to the dower rights of her mother, M. E. Armstrong, and that the appellee was entitled to the same; that the eighty acres of land above mentioned deeded by their father to the appellee were of greater value than most of the other land of the estate, being of the value of $10,000-$12,000.

Appellant, therefore, prayed for a partition of the lands and that commissioners be appointed and instructed to set aside to the appellant and the appellee, after carving out the homestead and dower interest of their mother, an undivided one-half interest in all of the lands owned by her father at the time of his death and including the eighty acres which he prior to that time had deeded to the appellee.

The appellee answered the complaint and alleged that her father, A. O. Armstrong, on the 5th of March, 1903, purchased the eighty acres of land in suit for the sum of $450, which at that time was a fair and reasonable value for the same, and that he immediately thereafter sold the same to the appellee by parol; that she at once took possession of the lands which were wild and built a house on the same and continued to reside thereon until May, 1918; that she made other improvements which she described; that under the terms of the oral contract of sale she was to repay her father the amount he paid for the lands, and she took possession and improved the lands upon the faith of that contract; that the lands had greatly increased in value; that on the 26th day of April, 1918, her father and mother executed to appellee a deed to the property at which time she paid her father $100 in cash and executed to him her four promissory notes in the sum of $100 each as the purchase price

for the lands; that since the execution of the deed she had paid one of the notes, and the others were in the hands of the administratrix, M. E. Armstrong, as a part, of the assets of the estate; that it was expressly understood and agreed between the appellee and her father and mother at the time of the execution of the deed that the transaction was a sale and not a gift, and that she was not to be held to account for the value of the land as an advancement out of her father's estate, but that upon payment of the notes she was to have the absolute title to the lands free from any claims of the estate.

Appellee joined in a prayer to the extent that the other lands, not including the eighty acres, be partitioned between appellant and the appellee subject to the homestead and dower rights of their mother.

The court found the facts to be that the lands were purchased by appellee's father for her in the year 1903 for the sum of $450, and that in December, 1903, she went into possession of the land under a parol contract with her father to sell her the lands for the same consideration which he paid; that on the 26th of April, 1918, he executed a deed to the appellee for a consideration of $500; that A. O. Armstrong from the time of his purchase of the lands until the time he executed the deed to the appellee had paid the taxes; that the land at the time of his purchase was heavily timbered; that the appellee and her husband had cut and removed therefrom timber to the value of several hundred dollars; that the land had greatly increased in value and at the time of the decree was worth from $6,000 to $8,000.

The court found that the deed to the eighty acres by A. O. Armstrong to the appellee was in pursuance of the parol contract of sale to her and was not an advancement and could not be considered as a part of the assets of the estate of A. O. Armstrong to be divided between the appellant and the appellee.

The court, thereupon, entered a decree dismissing appellant's complaint for want of equity as to this eighty acres, from which is this appeal.

The deed to the land in controversy from appellee's father and mother to appellee was executed April 26, 1918. The consideration expressed in the deed was "the sum of five hundred dollars," and, "the love and affection that we have for our said daughter."

The undisputed testimony shows that at the time the deed was executed the land was worth between six and eight thousand dollars. The appellant testified that after the deed was executed she had a conversation with her father in the course of which he said to her, "You and her (appellee) are the only two children and I will not make any difference between them, I expect you and Lizzie to share equal." He also stated "that the value of the land was more now than when he bought the place that they (appellee and her husband) were living on; that all would be made right."

One witness on behalf of the appellant testified that about thirteen years ago he was cutting timber for A. O. Armstrong on a tract of land adjoining the land in controversy. At that time Bonner was cutting timber on the eighty now in suit. Witness asked Armstrong "if it was Bonner's land," and Armstrong replied: "It may be some day when I get ready to give it to him."

Another witness heard Armstrong say something over two years before the trial "that Bonner has got no farm; that is my farm; he never paid the taxes on it."

Another witness, about six years before the trial, heard Armstrong say that the land in suit belonged to him, that it did not belong to her (appellee).

Still another witness, who had lived with Armstrong ten years, heard Armstrong say "a number of times" that "he intended for Sylvia (appellant) to have an equal charge with Lizzie" (appellee). These conversations occurred more than five years before the trial, "might have been nine years."

It was conceded that the land was assessed in the name of A. O. Armstrong from 1903 to 1918, and that during that time he paid the taxes.

The above is the material testimony upon which the appellant relies.

The appellee testified that she requested her father to buy the land for her and to hold it in his name until she paid for it or got money enough to make a payment on it. He bought it for the sum of $450. Appellee was to pay her father the sum of $500. She was to pay back the purchase money. She went into possession after her father got the deed. Her husband was in the sawmill business. The land was timbered, and they sawed all the timber that was suitable for sawing. They put sixty acres in cultivation, built dwelling and tenant houses, spent all the money derived from the place in the last ten years in improvements on same. It was the understanding between herself and father that the place was hers. She was to have it when she paid for it. He bought the land from M. R. Armstrong. The price he paid ($450) was reasonable at that time. Until he made her a deed, the land being still in his name, he paid the taxes. Appellee proposed twice to borrow money and pay for the land, but her father preferred that she should wait and pay it out without interest. The deed from M. R. Armstrong to A. O. Armstrong was introduced and the consideration named therein was $450.

The testimony of Mrs. M. E. Armstrong corroborated in all essential particulars the testimony of the appellee. She stated that the land was bought for appellee and turned over to appellee for a home. Appellee and her husband made the improvments on it; they had lived on it for twelve or fourteen years. At the time the place was purchased for appellee she offered to pay for it, but her father told her to go ahead and improve the place. Witness testified, among other things, concerning the deed made in 1918, that she was present when the deed was made. The appellee had paid her father one hundred dollars on the land. He was old, being ninety-four years and a few months when he died. Was talking about making a will, and said there was no use making a deed, that appellee would get the land any way,

that he intended for her to have it. He further said she, appellee, had "deviled him into making a deed." At the time the deed was made it was the understanding that appellee was to have the land absolutely, subject to the payment of the purchase money notes. She was not to account for any part of it in the distribution of the assets of the estate, except these notes.

The lawyer who prepared the deed and notes stated that he did so at the request of A. O. Armstrong. The material part of his testimony is as follows: "I understood from his conversation and from what he told me that he was making this deed to carry out his part of the contract of sale he had made verbally to his daughter a number of years ago; that he was conveying to his daughter all his interest and claims against this land except to the extent of the unpaid $400 of the purchase money, and that neither he nor his estate had any other claims against it."

The burden was upon the appellant to prove the allegations of her complaint. That is, the burden rested on her primarily to prove that the conveyance of the land in controversy was, not a simple gift, nor a sale from A. O. Armstrong to the appellee, but that same was given to her as an advancement. The appellant having proved by the undisputed evidence that the value of the land was $6,000 to $8,000 at the time of the execution of the deed, and that the consideration expressed therein was only $500, it was a *prima facie* showing of an advancement, to the extent, at least, of the difference between the consideration expressed and the real value of the land conveyed. For the law presumes that the natural affection of parents is as strong for one child as another, and that in the distribution of property parents will treat their children equally and fairly.

Therefore, when appellant adduced evidence which proved that her father had deeded to the appellee a tract of land worth between $6,000 and $8,000 for the sum of $500, she established a *prima facie* case of advancement,

as already stated, to the extent of the difference between the consideration paid and the real value of the land.

The parent, however, has the absolute right to make such disposition of his property as he pleases. Therefore, the presumption that he will not give one child a greater portion of his property than another is not a conclusive one, but one that may be overcome or rebutted by proof to the contrary.

Proof on the part of the appellant of the deed from A. O. Armstrong to the appellee and the disparity between the consideration paid and the actual value of the land at the time of the conveyance shifted the burden to the appellee to prove that the conveyance was not an advancement but a sale.

An advancement is a gift by a parent to a child in anticipation of that which it is supposed the child will be entitled to on the death of the parent.

The question as to whether or not a conveyance or transfer of money or property is regarded as a simple gift, or advancement, or a sale, is to be determined by the intention of the parent. The question as to what was the intention is generally purely one of fact to be ascertained from the circumstances of the transaction. The donor's intention is the controlling principle, and if it can be said from all the circumstances surrounding a particular case that the parent intended a transfer of property to a child to represent a portion of the child's supposed share in the parent's estate such transfer will be treated in law as an advancement. Conversely, if it appears that the ancestor intended that a gift to his child should not be treated as an advancement such intention will prevail.   1 R. C. L., p. 656, § 5, p. 665, § § 1617-23-27, and other cases in note; *Ruch* v. *Biery,* 110 Ind. 444; *McMahill* v. *McMahill,* 69 Iowa 115; *Wallace* v. *Reddick,* 119 Ill. 151.

The appellee does not contend, as we understand the record, that the deed in controversy was intended as a simple gift.   Appellant contends that it was a gift by way of an advancement, and the appellee that it was a sale.

Applying the above familiar rules of law of advancements to the facts of this record, we are convinced that a clear preponderance of the evidence shows that the deed in controversy was made in pursuance of an understanding between the appellee and her father that the latter should purchase the lands in controversy and convey the same to the appellee; that the transaction was a sale and not a gift by way of advancement. It was not a voluntary transfer without consideration, but on the contrary was a sale for a consideration which at the time of the original transaction represented the fair value of the land. . The deed was but the culmination of a transaction which antedated that instrument some fifteen years.

It was the consummation and evidence of a complete contract which was first entered into between the appellee and her father in the year 1903. The promise of A. O. Armstrong in 1903 to convey the land to appellee was, of course, not binding upon him in law, because it was not in writing, and there was no part of the consideration paid when appellee took possession. But A. O. Armstrong nevertheless considered his promise then made to appellee as binding upon his conscience, as evidenced by the execution of the deed in pursuance of such promise.

The findings of the chancellor are in accord with our own. The decree is, therefore, correct, and it is affirmed.