NEAL *v.* NEAL.

4-4675

Opinion delivered June 14, 1937.

*Hays & Wait* and *J. M. Smallwood,* for appellants.

*Caudle & White, Donham & Fulk* and *Fred A. Donham,* for appellees.

McHaney, J.  Appellants, brother and sister, are two of the heirs at law of Mary J. Neal who died intestate in April, 1932.  Appellee, Gladys Neal Brandon, is the granddaughter of Mary J. Neal, and the daughter of William G. Neal who predeceased his mother, leaving his daughter, Gladys, and a granddaughter, Betty Lou Brandon, whom he had legally adopted, as his sole heirs at law.  The latter is a minor and is represented in this action by her grandmother, and adoptive mother, Mrs. William G. Neal, as her guardian and next friend.  Appellees brought this action against appellants and Thomas C. Neal, another son and heir-at-law of the said Mary J. Neal, (but there was no personal service on him, and he is not affected by the judgment rendered herein), questioning the validity of the disposition of certain real estate and personal property by said Mary J. Neal in her lifetime.  On January 1, 1931, when she was 78 years of age and in very poor health, so that she thought it was her last illness, Mary J. Neal executed three separate deeds to real property owned by her— one to appellant Sarah Neal Rogers to what is referred to in this record as the home place and on which a value was fixed by the court of $12,000; another to both appellants to what is known as the drug store building valued by the court at $8,500; and another to appellee, Gladys Neal Brandon, to what is known as the rent house, valued by the court at $1,250.  The deeds to appellants were delivered at that time, but the deed to said appellee was not delivered to her until after the death of the grantor and none of the deeds was recorded until after her death, she continuing to remain in possession thereof and collecting the rents and profit therefrom, for more than a year thereafter, or until April, 1932.  On January 3, 1931, Mrs. Mary J. Neal caused to be executed and delivered to her four certificates of deposit by the Bank of Russellville, where she had on common deposit more than $25,500, and of which bank appellant, George S. Neal, is and was the president—one to herself and

appellant, Geo. S. Neal, for $11,000, one to herself and appellant, Sarah Neal or Mrs. Brown Rogers, for $6,000, one to herself and Thomas C. Neal for $7,000, and one to herself and appellee, Gladys Neal Brandon, for $1,500. All of said certificates were in the same form and one of them reads as follows:

"Russellville, Arkansas,
"January 3, 1931, No. 3545.

"This certifies that Mary J. Neal and Mrs. Brown Rogers has deposited with the Bank of Russellville six thousand dollars $6,000 payable to the order of either of them or the survivor in current funds, on the return of this certificate properly endorsed, six months after date with interest at the rate of four per cent. per annum. No interest after maturity.

"(Signed) Geo. S. Neal, President.
"Endorsed on Back: Mary J. Neal     4-26-31 Paid."

Three of these certificates of deposit, those to appellants and Thomas C. Neal, were surrendered, canceled and new certificates issued on April 27, 1931, in compliance with Mary J. Neal's letter to the bank of that date, as follows:

"Russellville, Arkansas
"April 27, 1931.

"Bank of Russellville,
"Russellville, Arkansas.
"Gentlemen:

"You will find enclosed herewith certificates of deposit issued by your bank, dated January 3, 1931, and numbered 3544, 3545, 3546, for $7,000, $6,000, $11,000, issued and payable to Mary J. Neal and Thomas C. Neal, Mary J. Neal and Mrs. Brown Rogers, and Mary J. Neal and Geo. S. Neal, respectively, payable in six months from date at 4 per cent. interest to either of us or the survivor.

"I desire that you figure up the accumulated interest on these certificates and issue some new certificates as follows:

"$8,000 to Thomas C. Neal, due 6 months payable to self, Mary J. Neal, either of us or the survivor.

"$8,000 to Sara Neal Rogers, due 6 months payable to self, Mary J. Neal, either of us or the survivor.

"$8,000 to Geo. S. Neal, due 6 months payable to self, Mary J. Neal, either of us or the survivor.

"Thanking you for your attention, I am,

"Very truly yours,

"(Signed) Mary J. Neal."

All of said last certificates were in the same form, one of them reading as follows:

"Russellville, Arkansas,

"April 27, 1931, No. 3622.

"This certifies that Geo. S. Neal has deposited with the Bank of Russellville eight thousand dollars ($8,000) payable to the order of self, Mary J. Neal, either of them or the survivor, in current funds, on the return of this certificate properly endorsed, six months after date with interest at the rate of 4 per cent. per annum. No interest after maturity.

"George S. Neal, President.

"Endorsed on Back: Geo. S. Neal    4-26-32 Paid."

All of them, of both issues, were kept in the possession of Mary J. Neal during her lifetime, as shown by her letter of transmittal of the first issue for cancellation and reissue, and by the undisputed evidence that they were kept in her safety deposit box at the bank, where they were found after her death.

By their complaint appellees sought to have the deeds heretofore mentioned canceled and set aside on the ground of mental incapacity of the grantor and undue influence of appellants; but if it be determined that said deeds were valid and conveyed the properties therein mentioned, then that such conveyances be held to be advancements, and the residue of said estate should be used so as to equalize the respective shares in said estate of the heirs. Also, they sought to have the attempted disposition of the money represented by the certificates of deposit set aside, and that appellants be required to account to them for same, as, also, all other property of which Mary J. Neal died seized and possessed. Appellants answered denying any mental incapacity of the grantor or any fraud or undue influence on their part,

and asserted the validity of the conveyances and other disposition of property made by their mother.

Trial resulted in a decree holding the deeds good and valid conveyances of the respective properties to the respective grantees, but held them advancements; that there was no legal delivery of the certificates of deposit during the lifetime of Mary J. Neal, but delivery was made after her death, and, with accrued interest, were paid by the bank, and that appellants had each received from this source $8,160, to which they were not entitled, but was the property of said estate to be distributed to the heirs according to the laws of descent and distribution. Judgment was rendered against each appellant in the sum of $8,910 for the benefit of said estate, which in addition to the certificate of deposit and interest collected, includes $750 each has received from other assets of the estate, which amount each was ordered to pay into the registry of the court within 15 days, else execution or garnishment would issue at appellees' request. Other orders and directions are made in the decree of the court which are not pertinent to the issue here.

1. For a reversal of the judgment against them, appellants first say that the adoption of Betty Lou Brandon by her grandfather, W. G. Neal, did not give her the right to inherit from Mary J. Neal. This may be true, a question we do not decide, but whether true or not, it does not concern appellants, for her mother, Gladys Neal Brandon, would inherit the whole of her father's share, if Betty Lou were held not entitled to inherit. So, it is a matter that concerns appellees only.

2. It is next contended that the court erred in holding that the deeds to the real estate constituted advancements. "An advancement," said JUDGE WOOD, for the court, in *Holland* v. *Bonner*, 142 Ark. 214, 218 S. W. 665, 26 A. L. R. 1101, "is a gift by a parent to a child in anticipation of that which it is supposed the child will be entitled to on the death of the parent."

"The question as to whether or not a conveyance or transfer of money or property is regarded as a simple gift, or advancement, or a sale, is to be determined by the intention of the parent. The question as to what

was the intention is generally purely one of fact to be ascertained from the circumstances of the transaction. The donor's intention is the controlling principle, and if it can be said from all the circumstances surrounding a particular case that the parent intended a transfer of property to a child to represent a portion of the child's supposed share in the parent's estate such transfer will be treated in law as an advancement. Conversely, if it appears that the ancestor intended that a gift to his child should not be treated as an advancement such intention will prevail. 1 R. C. L., p. 656; § 5, p. 665, §§ 1617-23-27, and other cases in note; *Ruch* v. *Biery,* 110 Ind. 444, 11 N. E. 312; *McMahill* v. *McMahill,* 69 Iowa 115, 28 N. W. 470; *Wallace* v. *Reddick,* 119 Ill. 151, 8 N. E. 801.''

It has long been the rule in this court that, where a parent makes a voluntary conveyance or gift to his child, there is a presumption of law that it is an advancement. *Robinson* v. *Robinson,* 45 Ark. 481; *Eastham* v. *Powell,* 51 Ark. 530, 11 S. W. 823; *Goodwin* v. *Parnell,* 69 Ark. 629, 65 S. W. 427; *Jackson* v. *Richardson,* 182 Ark. 997, 33 S. W. (2d) 1095. In the Goodwin case, *supra,* it was said: ''The conveyance of land by G. P. Goodwin to his son, Leon Goodwin, being voluntary, in the absence of evidence to the contrary, is presumed to be an advancement, the presumption being that a parent intends 'that all his children shall equally share in his estate, not only in what remains at his death, but equally in all that came from him.' The doctrine of advancement is invoked to effectuate this intention.''

This is, also, the general rule, for in 1 R. C. L., p. 668, it is said: ''For the doctrine that a parent desires to distribute his estate equally among all his children is so strong, that, in the absence of clear and convincing evidence to the contrary, it will be presumed that a parent who during his lifetime makes a substantial gift to a child intended such gift to be an advancement; and hence it is often stated that a gift to a child or an heir by an ancestor in his lifetime is *prima facie* an advancement. A transfer of land by a parent during his lifetime to a child will be presumed to constitute an ad-

vancement of a portion or the whole of that child's share in the parent's estate, where the consideration expressed is nominal, and natural love and affection.'' See, also, §§ 3485, 3486, Crawford & Moses' Digest.

Applying these rules to the facts presented in this record. Did the court err in holding these conveyances advancements? We think not. The conveyances were to children and a grandchild. The consideration expressed was nominal—''One dollar and natural love and affection.'' The evidence, disregarding the deeds, fails to convince that Mary J. Neal did not intend to treat all of her children and the deceased son's child alike. Gladys Neal Brandon and her mother both testified that Mary J. Neal expressed the intent that Gladys Neal should have her father's part of her estate. Another fact is that the deeds were not put on record and appellees were not advised that they had been executed, until after the death of Mary J. Neal, who, for more than a year and three months after execution, remained in possession and collected the rents and profits. Under this state of facts, we think the court was justified in holding that the presumption of law as to advancements had not been overcome.

3. It is next earnestly insisted that the written signed agreement executed by appellants and appellees for the distribution of the residue of the estate, consisting of cash and notes of the total value of $3,283 cannot be questioned, and that appellees are estopped thereby. We cannot agree with appellants in this regard. This is principally a question of fact, depending on confidential relations between appellees and their uncle, in whom they had the utmost confidence. Whether the confidence reposed was violated or misplaced depends upon the facts and circumstances detailed in evidence, and we think it could serve no useful purpose to set it out. Suffice it to say, that the court's finding in this regard is not contrary to the evidence and must be sustained.

4. It is finally insisted that appellants are entitled to the funds represented by the certificates of deposit. It will be noticed that in the certificates dated January 3, 1931, that Mary J. Neal and the child named therein

appear as depositors. For instance, the language is: "This certifies that Mary J. Neal and Geo. S. Neal has deposited," etc., and "payable to the order of either of them or the survivor in current funds," etc., while in those dated April 27, 1931, superseding and canceling the former, the language is: "This certifies that Geo. S. Neal has deposited," etc., and "payable to the order of self, Mary J. Neal, either of them or the survivor, in current funds," etc. All certificates were signed by George S. Neal, president of the Bank of Russellville, and of course, he knew of their existence all the time. But in his letter to Gladys Neal Brandon, dated April 26, 1932, after his mother's death, he indicated that he had just discovered the certificates. He said: "Sarah and I have invoiced mother's affairs and found that she had an insurance policy. * * * We also found certificates of deposit, which mother had made over as follows:" Mrs. Rogers also testified that she and her co-appellant found the certificates in her mother's lock box while they were making an inventory, and the fair inference is from her testimony that she knew nothing of the certificates until that time, although she said her mother told her "she was going to make a distribution some way." Appellee, Mrs. William G. Neal, testified that, after the death of Mary J. Neal, appellant, George S. Neal, came to her apartment, and she said to him: "Sam, why did you do this to Gladys and Betty Lou? You know if Will (referring to her deceased husband) had been living he would have seen that your children were treated fairly." He answered that he didn't do it, that Sarah did it, and that Mrs. Sam Neal told her the same thing, "that Sarah was the cause of the estate being divided as it was." This testimony was undisputed, except that George S. Neal said that he didn't remember the conversation.

Counsel for appellants conceded in oral argument that the facts and circumstances surrounding the issuance of these certificates do not establish a gift either *inter vivos* or *causa mortis*, and this concession is well taken, for many of the elements of such a gift are lacking. In *Stifft* v. *W. B. Worthen Co.*, 176 Ark. 585, 3 S.

W. (2d) 316, we said: "Gifts *inter vivos,* or *donatio inter vivos,* are gifts between the living, and are perfected and become absolute during the lifetime of the donor and donee. *Hatcher* v. *Buford,* 60 Ark. 169, 29 S. W. 641, 27 L. R. A. 507. The elements necessary to constitute a valid gift *inter vivos* were stated by this court in *Lowe* v. *Hart,* 93 Ark. 548, 125 S. W. 1030, to the effect that the donor must be of sound mind, must actually deliver the property to the donee, must intend to pass the title immediately, and the donee must accept the gift. It will, therefore, be seen that a gift *inter vivos* cannot be made to take effect in the future, as such a transaction would only be a promise or agreement to make a gift, and, being without consideration, would be unenforceable, and void, and considerations of blood or love and affection are not sufficient to support such a promise. 12 R. C. L. 930. This court, from *Hynson* v. *Terry,* 1 Ark. 83, down to the present time, in an unbroken line of cases, has held that actual delivery is essential, both at law and in equity, to the validity of a gift, and that without it the title does not pass. Mere delivery of possession is not sufficient, but 'there must be an existing intention accompanying the act of delivery to pass the title, and, if this does not exist, the gift is not complete.' *McKee* v. *Hendricks,* 165 Ark. 369-383, 264 S. W. 825, 952, and cases cited."

In the same volume of the reports will be found a case very much in point, involving an alleged gift of certificates of deposit, *Hudson* v. *Bradley,* 176 Ark. 853, 4 S. W. (2d) 534. There, the certificates were somewhat different in that W. T. Hudson or Joe Hudson had made the deposit, "payable to his or either own order" in one bank, and that W. T. Hudson had made the deposit "payable to the order of himself or Joe Hudson, his son," in another bank. It was held there was no completed gift to the son, where they were never delivered to the son, but remained in the father's possession to his death. Here, appellants never had possession of the certificates until after their mother's death and there was no completed gift.

Some contention is made that there was created a joint tenancy in the certificates. It is admitted that an estate by the entirety was not created for many of the essential elements of such an estate are lacking. For the same reason it cannot be held to be a joint tenancy. Such an estate is defined in 7 R. C. L. 811, as follows: "An estate in joint tenancy is an estate held by two or more jointly, with an equal right in all to share in the enjoyment of the land during their lives. Four requisites must exist to constitute a joint tenancy, viz: the tenants must have one and the same interest; the interests must accrue by one and the same conveyance; they must commence at one and the same time; the property must be held by one and the same undivided possession. If any one of these elements is lacking, the estate will not be one in joint tenancy. Hence, where two or more persons acquire an individual interest in property at different times or by different conveyances, the estate created is not joint tenancy, for the unity of time or the unity of conveyance would be disregarded were this to be called a joint tenancy." Under the facts in this case it will readily be seen that there was no joint tenancy, as defined above. It appears to us to be more in the nature of a gift to take effect in the future, or on the death of the donor, which is void under the rule stated in *Stifft v. W. B. Worthen Co., supra.*

We think the court correctly held that the attempted conveyance of funds by the certificates of deposit was ineffectual under any theory, and that such funds were a part of the assets of said estate.

We find no error in the trial court's judgment, and it is accordingly affirmed.

Mr. Justice HUMPHREYS holds that the deeds to the real property constitute gifts.