# Maffit *against* Clark.

Father seised of land died intestate, leaving two children, infants, one of whom soon after died and afterwards the other, unmarried and without issue, the mother living.  *Held*, that the brothers of the father took the estate by descent under the 9th section of the Act of 8th April 1833, and not the mother.

ERROR to the Common Pleas of *Chester* county.

Sally Maffit against William Clark.   This was a case stated as follows :

The fee-simple interest in the tract of land in dispute was vested in the Rev. Cyrus H. Jacobs.   He died on the 14th September 1836, intestate, leaving a widow, Jane W. Jacobs, and two children, Anna Maria Jacobs and Lucy Strawbridge Jacobs, both infants.   Of these the said Lucy Strawbridge Jacobs died in the month of November of the same year, intestate, unmarried and without issue, leaving her mother and sister to survive her.   In the month of February in the year following, the said Anna Maria Jacobs died, also intestate, unmarried and without issue.   Subse-quently, to wit, on the 10th February 1838, Jane W. Jacobs, the mother, died.   By her will dated the 6th December 1837, and duly proved, she devised all her real estate to her aunt, the plain-tiff, for the term of her natural life, and the remainder therein to her three brothers, William W. Mackall, Henry C. Mackall, and

[Maffit v. Clark.]

Richard C. Mackall, who survived her, in fee.  The next of kin of the said Anna Maria Jacobs on the part of the father, the said Cyrus H. Jacobs, were Thomas B. Jacobs and James Hunter Jacobs, his two surviving brothers, who conveyed their interest in the premises, after the decease of the said Jane W. Jacobs, to Commodore Jesse D. Elliott, who conveyed the same to William Darlington, Esq., who conveyed the same to the defendant now in possession.

The question for the opinion of the court is, whether the plaintiff is entitled to recover any, and if any, what part of the tract in dispute.  If the court shall be of opinion that the plaintiff is entitled to recover the whole, or any part of the premises, then judgment to be entered for him for whatever he may be entitled to recover, with costs.  If the opinion of the court shall be, that the plaintiff is not entitled to any interest in the premises, then judgment to be entered for the defendant, with costs.

The court below gave judgment for the defendant.

Errors assigned :

1. The court erred in rendering judgment for the defendant.

2. The plaintiff, according to the facts stated, was entitled to an undivided moiety of the land described in the writ.

*Lewis* and *Mallery*, for the plaintiff in error, referred to *Simpson v. Kelso,* (8 *Watts* 252) ; *Act of 8th April* 1836, *sects.* 6, 11; *Clepper v. Livergood,* (5 *Watts* 113) ; 2 *Black. Com.* 212; *Litt., sect.* 3; *Co. Litt.* 10 *b,* 11 *a* ; 3 *Rep.* 406 ; 1 *Vent.* 414 ; *Hale's C. L.* 323.

*Meredith* and *Darlington,* contra, cited *Shippen* v. *Izard,* (1 *Serg. & Rawle* 222) ; *Lit., sect.* 4 ; 4 *Kent's Com.* 404 ; 2 *Rep.* 29 ; *Baker v. Chalfant,* (5 *Whart.* 477).

The opinion of the Court was delivered by

Huston, J. — The case stated presents these facts.  The lands in question descended from Cyrus Jacobs to his two daughters, Lucy and Anna, subject to their mother's dower.  Lucy died in November 1836, an infant without issue or husband.  In February 1837 Anna also died unmarried and without issue and intestate ; and in February 1838 their mother died.  Before her death she devised her real estate to her aunt, Sally Maffit, the plaintiff, for life, remainder to her three brothers in fee.  When Mr Jacobs died, his lands descended to his daughters subject to a dower to their mother : so far it came on the part of, or descended from the father.  When Lucy died her share descended to and vested in her sister Anna.  *Intest. Law, sect.* 5.  On the death of Anna her estate vested in her mother for life, at least, or by the 11th section, in her in fee, unless her right is affected by the 9th section.  The 5th section is in these words : " In default of issue and brothers and sisters of the whole blood and their descendants as aforesaid,

[Maffit v. Clark.]

and subject to the estates and interests hereinbefore given to the widow or surviving husband, if any, the real estate shall go to and be vested in the father or mother of the intestate, or if both be living at the time of his death, in the father and mother for such estate as the said intestate had therein."

In order to understand the construction of the 9th section, I must here state that by the 6th section, in default of brothers and sisters of the whole blood and of father and mother, the estate " shall descend to and be vested in the brothers and sisters of the half blood of the intestate and their issue in like manner respect- 'ively as is hereinbefore provided for the cases of brothers and sis- ters of the whole blood and their issue." The 7th section is : " In default of all persons hereinbefore described, the real and personal estate of the intestate shall descend to and be distributed among the next of kin to such intestate." Section 8. " Provided that there shall be no representation admitted amongst collaterals after brothers' and sisters' children ;" and then comes the next proviso. Section 9. " Provided also that no person who is not of the blood of the ancestors or other relations from whom any real estate de- scended, or by whom it was given or devised to the intestate, shall in *any of the cases before-mentioned* take any estate of inheritance therein, but such real estate subject to such life-estates as may be in existence by virtue of this Act, shall pass to and vest in such other persons as would be entitled by this Act if the persons not of the blood of such ancestor or other relation had never existed or were dead at the decease of the intestate."

In the discussion of this case some censure was cast on the framers of this law, because the expression " came or descended on the part of the father or descended on the part of the mother,"' was dropped, and the words " ancestors or other relations from whom any real estate descended or by whom it was given or de- vised to the intestate," were used. Perhaps this was not censur- able. Those words are copied from the 11th section of the former Act; and in that Act were evidently intended to have precisely the same meaning as " came or descended on the part of father or mother." Perhaps the words, " no person who is *not of the blood of the ancestor* or other relation," &c. are a clue to the true con- struction; and with that and the construction put on the words " descended on the part of," as having precisely the same meaning as the words used in this Act, I proceed to consider this case.

On the failure of lineal descendants or issue of the person last seised, the inheritance shall descend to his collateral relations being of the blood of the first purchaser; 2 *Chitt. Black.* 177; and he defines " first purchaser" to be he who first acquired the estate to his family, whether the same was transferred to him by sale or gift, or by any other method *except that of descent.* After some difficulties which occurred in former times, are disposed of, he proceeds : " When an estate hath really descended in the course

[Maffit v. Clark.]

of inheritance to the person last seised, the strict rule of the feudal law is still observed, and none are admitted but the heirs of those through whom the inheritance hath passed; for all others have demonstrably none of the blood of the first purchaser in them, and therefore shall never succeed;" and he concludes this head, "that he who would have been heir to the father of the deceased (and of course to the mother or any other real or supposed purchasing ancestor) shall also be heir to the son; a maxim that will hold universally, except in the case of a brother or sister of the half blood; which exception (as appears afterwards) depends on very special circumstances." Mr Chitty, in his note, shows that if a man hold one estate on the part of the father and another estate on the part of his mother, these will go to different persons. It would be time misspent to enter on a discussion or repetition of all the rules of descent. Blackstone and Hale's Hist. of Com. Law, and some later treatises have gone fully into it. The only difficulty has arisen from not attending to the point at which we must set out. We have not here to do with an estate purchased by the intestate. Half descended directly from her father. Her sister could not by any rule be called the first purchaser or perquisitor; for by the rule what came by descent is not of the kind of estate which makes a perquisitor. We must go then a step back and inquire who would have been the heir of Lucy if she had been an only child.

The maxim that he who is to inherit an estate which descended to the intestate, must be also heir to him from whom it descended, it will be seen, cannot apply to property purchased by the intestate, but only to property which he held by descent. The case of *Burr* v. *Sim*, (1 *Whart.* 252), appeared to me, at first, as creating some difficulty. George Craig directed two houses to be sold by his executors and the price given to trustees to educate his only son, and on his coming of age to pay the principal and interest to the son. The houses were not sold. The son came of age and devised one of the houses in fee and the other for life, and after the death of tenant for life, a question was made whether it went to the heirs on the part of the father or on the part of the mother. It was held the son took it as purchaser (perquisitor), it having been devised to him as money, and his election to take as land in the nature of a purchase: and it went to the nearest of kin, without regard to whether on part of father or mother. This was supposed to follow from the cases of *Allison* v. *Wilson* and *Morrow* v. *Brenizer*, in which it was held the property was converted into money instantly on the death of the testator, and before any sale by the executors. It was not mentioned by the counsel nor noticed by the court that the son, to whom it was given absolutely, might possibly have claimed as heir, being the worthier title; and probably did consider himself so entitled. This was followed by *Simpson* v. *Kelso*, (8 *Watts* 252), and they decide that a child, where land is directed to be sold, and who on coming of age elects to take this

[Maffit v. Clark.]

land and does take it, is to be considered as acquiring it by pur-
chase, and not by devise or descent; but it has not yet been
decided that a child taking purely by descent can be considered as
a first purchaser or perquisitor; and we do not decide so. The
profession, and, I believe, the members of this court consider the
two last cases as having gone far enough; and this, as I under-
stand the case, is the decision of this court in *Baker* v. *Chalfant*,
(5 *Whart.* 480), where those of the blood of the ancestor recovered
a moiety of the tract descended and other heirs the other lands.
I shall not enter into the propriety or correctness of the feeling,
which inclines in favour of that stock of ancestors whose labour or
industry acquired any property, in preference to another stock
who in no way contributed to its acquisition. The law seems to
me to have settled the matter, and I feel neither inclination nor
authority to change it.

                                        Judgment affirmed.