## LEWIS v. GORMAN.

A. died seised of land, which descended from his mother, who was the devisee of her father, who was himself the devisee of his father, who purchased from a stranger. The grandchildren of the brother of A.'s maternal grandmother not being of the blood of the first purchaser, cannot recover the land, there being nephews of his father still living, who are nearer of kin.

IN error from the Common Pleas of Delaware county.

*April* 7, 8. In this ejectment the only question was, whether, on the plaintiff's evidence, he had shown title in himself to any part of the land. In 1694, Thomas Jones purchased the land, and devised it to his son Peter, who married Ann Lewis, and devised it to his daughter by her, Ann Jones, in fee-simple; but if she died before coming of age, then over. Ann Jones lived beyond twenty-one, and intermarried with James Thomas, and had issue, Peter Thomas, who died intestate, and without issue. The plaintiff was a grandson of a brother of Ann Lewis, who was the maternal grandmother of Peter Thomas, and there were also living first cousins by his father's side. The title of the defendant did not appear.

The following table shows more clearly the relationship of the parties:

The plaintiff, John Lewis, with others in the same degree, were the nearest relatives of Peter Thomas on the maternal side; and Abel Thomas and his sisters the nearest on the paternal.

The court below gave judgment for defendant, for the reasons stated by

BELL, P. J., (after stating the facts and the question for decision).—"It is admitted the plaintiff is not entitled by virtue of the eleventh section of the act of 8th of April, 1833, which gives the real and personal estate of an intestate, in every case not expressly provided for by the act, to his next of kin, "*without regard to the ancestor or other relation from whom such estate may have* *come ;*" for there being the grandchildren of the intestate's paternal

grandfather William Thomas, the plaintiff is not next of kin, being one degree further removed than those.

"But the plaintiff bases his claim on the fact that he is of the blood of the intestate's mother, from whom the estate, as we have seen, was immediately derived by descent, and is therefore to be preferred to the kindred in nearer degree, who have none of this blood in their veins.

"The first six sections of the act of 1833, regulating the descent and distribution of intestate's estates, are devoted to making a disposition of such estates to the issue of the deceased, his brothers and sisters of the whole blood and their descendants, father and mother, competent by the act to take an estate of inheritance, and brothers and sisters of the half-blood and their issue, in the order in which these several classes are there enumerated. The plaintiff is of none of these classes. Then follows the seventh section, under which, in connection with the ninth, he insists his case is included. These sections provide, 'That in default of all persons hereinbefore described, the real and personal estate of the intestate shall descend to and be distributed among the next of kin to such intestate; provided, That no person who is not of the blood of the ancestors or other relations from whom any real estate descended, or by whom it was given or devised to the intestate, shall, in any of the cases before mentioned, take any estate of inheritance therein, but such real estate, subject to such life-estates as may be in existence by virtue of this act, shall pass to and vest in such other persons as would be entitled by this act, if the person not of the blood of such ancestor or other relation had never existed, or were dead at the decease of the intestate.' If the plaintiff be of the blood of 'such ancestor,' then, it is clear his claim is preferable to that of those of a nearer degree of kindred to the intestate, who are not of this blood. But if, within the meaning of the act, he is not of the blood of those from whom the estate descended, or by whom it was given or devised, he is as clearly to be excluded in favour of those nearer of kin.

"This brings us to the question, who is contemplated by the act as being the ancestors or other relations? Almost from the beginning, one great object of the framers of our system of descents has been to preserve real property in the line of those who originally acquired it. In Bevan *v.* Taylor, 7 Serg. & Rawle, 397, it is remarked by Mr. J. Duncan, when delivering the opinion of the court, 'Under the acts of 1794 and 1797, it was the intention of the legislature in every grade of descent, to exclude from the

inheritance all who were not of the blood of the ancestor from whom the estate came; in other words, that the ancestor is the *commune vinculum*, whether the estate ascends or descends.' In Clepper *v.* Livergood, 5 Watts, 113, this principle was applied to the exclusion of a father who claimed a fee-simple in the share of a deceased child, who derived part of the estate from a deceased sister, the whole having come *ex parte materna.*

" The court traced the property to the stock from which the whole had been derived, and were of opinion that it came within the exception of the act of 1784, and consequently descended in the same manner as if the deceased child had survived its father.   The exception referred to excludes the father, where the estate came to the intestate on the part of his mother, and this act and that of 1797 contains a similar exception against the mother, where the estate descended on the part of the father.   It is true the present case arises under the act of 1833, which does not contain these exceptions in the phraseology employed in the prior statutes just cited.   But in substituting the general provision contained in section ninth of the last act, the legislature did not mean to make a change in this particular in the settled policy of the system.   The object of that section, which in its language is mainly borrowed from the eleventh section of the act of 1794, relating to brothers and sisters of the half blood and their issue, was to make a more general application of the principle of exclusion than the language of the old statutes might strictly import.   Still the meaning of both acts is the same; it is to shut out all who cannot claim to share in the blood of those from whom the estate came.   Adopting this as the intent and pursuing the doctrine of Bevan *v.* Taylor, already cited, and Baker *v.* Chalfant, 5 Whart. 477, the Supreme Court in the recent case of Maffit *v.* Clark, 6 Watts & Serg. 258, held that in a case of pure descent, in order to discover who those ' ancestors or other relations' are, it is necessary to ascend to the first purchaser— to him who first acquired the estate to his family.   The maxim under our statutes, as well as at common law, is, that he who claims an estate descended to an intestate, must show himself heir to him from whom it descended as perquisitor.

" He is the *propositus*, and from him the inheritable blood is to be derived.   But the statute makes no distinction between estates descended and estates given or devised.   They are all put in the same category, and in each we must look to those from whom it descended, or by whom it was given or devised to the intestate.   But admitting this, it is insisted for the plaintiff, that in contemplation

of law, the estate in this instance descended to the intestate from his mother, Ann Thomas, who, by virtue of the devise by her father to her, was a purchaser, and so is for every purpose to be regarded as the acquirer of the land. It is true, if one purchase an estate, or otherwise acquire it by his own means, he becomes the fountain of inheritable blood, and it will descend under our system, on all his collaterals, whether of the paternal or maternal line. But, although at common law, all who take in any way, except by descent, are regarded as purchasers; it would be easy to show on the words of our statute, that one who takes gratuitously by devise is not to be viewed as the *propositus* in determining the future descent of the land. To make him so, he must be a purchaser for value in the popular sense of the term, or at least derive the estate by gift from some one other than an ancestor. But we are spared the necessity of argument on this head, by the determination in the case of Hartman's Estate, 4 Rawle, 39, where an intestate had taken certain land at an appraised value, under the will of his father, paying to his brothers and sisters their share of the valuation. Our Supreme Court took a distinction between that portion of the estate for which he had paid, and that which he held gratuitously as his share. As to the former, he was deemed a purchaser for value, and therefore the founder of a new stock, but as to the latter, though he took by virtue of the devise, he was not so regarded, and consequently the estate having come to him by way of testamentary gift on the part of his father, it was held his mother was to be excluded from the enjoyment of any portion of such share. This case settles that in case of gift, by devise by a father to a child, the devisee, although at common law deemed a purchaser, and as such, the head of a new line of descent, is not so esteemed under our statute, but we must go back to him who actually acquired the estate, and brought it into the family in determining who is entitled to succeed to the inheritance. It follows, that Ann Thomas, the mother of the intestate, is not the ancestor from whom the estate descended, or by whom it was given. To find him, we must go back to Peter Jones, the grandfather, if not to Thomas Jones, the great-grandfather. Between these and the plaintiff there is no consanguinity, and he is, consequently, excluded from any portion of the inheritance by the operation of the *proviso* of the ninth section, and as he is not helped by the provisions of the eleventh section, it results that he is not entitled to have a judgment rendered in his favour on the case stated.

Judgment for the defendants.

*Lewis*, for plaintiff in error.—The plaintiff is the heir of the mother of the last lawful owner, the defendants showing no title. There are none of the blood of the Lewises remaining. But Ann became a purchaser by the devise, since it waš not the same estate as would have descended. [*Per Curiam.*—Does not the statute put devises and descents on the same footing, in this respect?] When the descent is broken by devise, the devisee is the last party to whom you can trace title; 7 Cranch, 456; 1 Prest. on Estates, 454; Plunket *v.* Holmes, 1 Lev. 11.

*D. P. Brown*, contrà.—Maffit *v.* Clark, 6 Watts & Serg. 258, decides this case; it is also well settled that a devisee is in by descent, if he has the same quantity of estate given by the will as by the law. But that is immaterial, for by our law a volunteer of any kind, being of the blood of the donor, does not become a purchasing ancestor. The words of the act are general, that the party claiming as heir must be of the inheritable blood of the ancestor, who acquired title otherwise than as volunteer. The exception made by the courts is, where there is no common stock to the donor and donee; as where a wife was devisee of her husband. All claiming as heirs are subject to this rule, excepting when for default of all such persons, they come in as next of kin. In neither of these two capacities does the plaintiff show any title.

*April 24.* Per Curiam.—Judgment affirmed for the reasons expressed by the Judge below.