# Roberts's Appeal.

*Intestate Law of* 1833 *construed.—Rule as to Blood of first Purchaser applies to Parental Succession.*

1. The common law principle of descents, that inheritable blood is only such as flows from the perquisitor of the estate, applies to cases of parental succession to the estates of deceased children, as well as to cases of strict descent from parent to child.

2. Therefore, where one died intestate, leaving a widow and son, who afterwards died intestate, unmarried and without issue, it was held that the mother could not succeed to the estate of the son, because she was not of the blood of the first purchaser.

APPEAL from the Orphans' Court of *Fulton county.*

This was an appeal by Nancy Roberts from the decree of the Orphans' Court, distributing the balance in the hands of George A. Smith, administrator of Henry Roberts, deceased.

3 WR.—27

[Roberts's Appeal.]

Henry Roberts, the grandfather of the intestate, devised a tract of land in Fulton county to his son Jacob, charged with sundry legacies to other children of the testator.

Jacob accepted the devise, took possession of the land, and paid part of the said legacies. He afterwards died intestate, seised of said land, leaving a widow, Nancy Roberts, the appellant, and one child, Henry Roberts. Subsequently Henry Roberts died in his minority, intestate, unmarried, and without issue, and letters of administration upon his estate were granted to George A. Smith.

On the petition of the administrator, the real estate aforesaid was sold for the payment of a judgment against the estate of $498, besides interest and costs, and also for the balance due upon the legacies charged upon the land by the last will and testament of Henry Roberts, the grandfather. The administrator filed his account, charging himself with the proceeds of said real estate, and exhibiting a balance of $1700 to be applied to said debt and legacies. This account was confirmed by the court on the 3d of August 1859, and an auditor appointed to make distribution of this fund.

Nancy Roberts, the mother of the intestate, claimed all the money raised by the sale of the real estate of the intestate that was left after payment of the debts, &c., under the 5th section of the intestate laws of this Commonwealth of April 8th 1833.

George A. Smith, the administrator of the estate of the intestate, contended that the mother was only entitled to the interest of this money during her lifetime, and that the principal after her death belonged to the next of kin of the intestate *ex parte paterna*.

The auditor found a balance of $672.48, which he appropriated to the mother of the intestate, absolutely, and so reported.

To this report exceptions were filed, alleging that the mother was entitled only to the interest of said balance during her lifetime, and that the principal, at her death, belonged to the uncles and aunts of the intestate, on the father's side, as his next of kin.

The court sustained these exceptions, amended the report accordingly, and, on the 20th October 1860, confirmed the same.

From this decree of the Orphans' Court of Fulton county, Nancy Roberts appealed to this court.

*King* and *Jordan*, for appellant.—The 5th section of the Act of 8th April 1833, regulating descents in Pennsylvania, is in the following words: " In default of issue, and brothers and sisters of the whole blood, and their descendants as aforesaid, and subject to the estates and interests hereinbefore given to widow or surviving husband, if any, the real estate shall go and be vested in the father or mother of the intestate, or, if both be living at

the time of his death, in the father and mother, *for such estate as the intestate had therein."*

The intestate here had a fee simple, and the statute declares his real estate shall be vested in the mother for such estate as he had therein.

It is contended, and the court below decided, that the proviso in the 9th section of the act controls these plain words, and limits the estate of Mrs. Roberts, the appellant, to a life estate, because she is not of the blood of the father of the intestate, from whom the land descended to him.

This proviso, critically considered, is annexed to the 7th section, which declares that "in default of all persons hereinbefore described, the real and personal estate shall descend to and be distributed amongst the next of kin to such intestate." Then follow two provisos; first, "provided that there shall be no representation admitted amongst collaterals after brothers' and sisters' children;" and second, "provided *also* that no person who is not of the blood of the ancestors or other relations, from whom any real estate descended, or by whom it was given or devised to the intestate, shall, *in any of the cases before mentioned*, take any estate of inheritance therein, but such real estate, subject to such life estates as may be in existence by virtue of this act, shall pass and vest in such other persons as would be entitled by this act, if the persons not of the blood of such ancestor, or other relations, had never existed, or were dead at the decease of the intestate."

The first proviso manifestly is confined to the distribution amongst the next of kin under the 7th section. It cannot apply to any other; and it would seem that the word *also*, in the second proviso, was intended to limit to the same class of cases. The words *"in any of the cases before mentioned,"* upon which so much stress was laid by Justice Huston, in the case of Maffit *v.* Clark, 6 W. & S. 258, are ample enough in themselves to apply to all the provisions of the act preceding the 7th section. But it is claiming too much to say that these words shall control, set aside, and repeal the clear and emphatic phrase, "for such estate as the intestate had therein."

Such a construction would be making a proviso repeal the plain provisions of the statute, in violation of the well established rule of construction, as declared in Kent's Com. vol. 1, p. 463, where it is said, "that a proviso, repugnant to the purview of the statute, renders it (the proviso) equally nugatory and void as a repugnant saving clause."

"A proviso repugnant to the enacting clause in a statute is void:" Am. Law J. vol. 1, p. 501, and cases there cited.

If the intestate had derived his estate immediately from his paternal grandfather, and had died as he did, but leaving a father

and mother, they would both have taken the land, under the act, "for such estate as the intestate had therein;" a fee simple, not a fee simple to the father by virtue of his blood, and to the mother a life estate, and yet such must be the construction if the proviso referred to is permitted to repeal the plain provisions of the fifth section of the act.

*George A. Smith*, for appellee, relied upon the Statute of Descents, passed April 8th 1833, and the construction given to the 5th section, and to the proviso contained in the 9th section, by the Supreme Court, in the case of Maffit *v.* Clark, 6 W. & S. 258.

The opinion of the court was delivered, May 16th 1861, by

WOODWARD, J.—We entertain no doubt that the proviso found in the 9th section of our Intestate Act of 1833, applies to all of the "cases before mentioned in the act," as well those that are enumerated in the 5th section as those of the 7th section. This proviso is a legislative recognition of the general common law principle of descents, that inheritable blood is only such as flows from the perquisitor of the estate. The nature of the principle, and the terms in which it stands incorporated in our system of intestacy, alike demand that it should be applied to cases of parental succession to the estates of deceased children, as well as to cases of strict descent from parent to child.

But it is argued that the 5th section gives the surviving parent the deceased child's property "for such estate as the intestate had therein," and that these words are not to be repealed by an inconsistent proviso. The act is framed upon a series of supposititious cases, and the general principles which were intended to modify whole classes of these cases, are frequently placed in provisos. This was necessary for clearness of expression, and to avoid vain repetitions. Each class of cases is to be read therefore in connection with its appropriate proviso; and when the 5th section says the parent shall, in the contingency there contemplated, succeed to the estate the deceased child held, we are to read in immediate connection therewith, as a necessary qualification or limitation of the right of succession, what is contained in the 9th section. We have no more right to repeal one of the clauses than we have to disregard the other. It is not the case of a proviso that is inconsistent with the enacting clause, but of a proviso that limits the generality of expression in the enacting clause. Parents shall succeed to the estates of their children who die intestate and without issue, provided they be of the blood of the first purchaser. The theory of our intestacy is that estates shall not cross over from the family who acquired them to the family who had no part in the acquisition; and this general and just princi-

ple would be violated, and the symmetry of our system would be marred, if parental succession, like all other successions, were not made to conform to it: 6 W. & S. 258.

Possibly a question might have been raised upon the facts before us, whether Jacob Roberts, taking the estate by devise from his father, charged with legacies which he paid, was not a purchaser; but even if he was, his widow was not of his blood. If their son Henry could be regarded as a purchaser, then the mother might succeed, but no point of this sort was made, and perhaps there was no ground for it. As the case was presented to the court below and here, it was properly ruled, and the decree is accordingly

Affirmed.