## Reed et al., Appellants, v. Geddes.

*Decedents' estates—Intestate laws—Heirs of blood—Propositus —Act of April 8, 1833, P. L. 315.*

1. Long established rules of property will not be disturbed by the courts; changes therein must be made by the legislature.

2. Under section 9 of the Act of April 8, 1833, P. L. 315, 318, in determining who is entitled to property which descended from an intestate, it is necessary to ascend to him who first acquired the estate to his family; where that section applies, only those who are of his blood will inherit from the intestate.

3. Only a purchaser for value in the popular sense of the term, or a donee or devisee from one who is a stranger to his blood, can become the propositus in determining the future descent of property.

4. The second syllabus in Opdyke's Appeal, 49 Pa. 373, does not correctly interpret section 9 of the Act of April 8, 1833, P. L. 315.

*Appeals—Record—Consent of parties to departure from record.*

5. Without the consent of both parties, the Supreme Court, in determining whether a judgment or decree should be affirmed, will not go outside the record certified by the court below.

Argued September 28, 1926.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 116, March T., 1926, by plaintiffs, from judgment of C. P. Somerset Co., May T., 1926, No. 162, for defendant on the pleadings, in case of Maggie M. Reed et al. v. Zelda F. Geddes.   Affirmed.

Ejectment for land in Borough of Windber.   Before BERKEY, P. J.

The opinion of the Supreme Court states the facts.

Judgment for defendant on pleadings.   Plaintiffs appealed.

*Error assigned* was, inter alia, judgment, quoting record.

*J. Earle Ogle, Jr.,* with him *Joseph Levy,* for appellants.—Sarah Rachel Geddes, not William T. Geddes, was the first purchaser, and she became the stock of a new descent: Kennedy v. Nedrow, 1 Dall. 415; Baker v. Chalfant, 5 Wh. 477; Culbertson v. Duley, 7 W. & S. 195; Walker v. Dunshee, 38 Pa. 430; Opdyke's App., 49 Pa. 373; Kinney v. Glasgow, 53 Pa. 141; Bevan v. Taylor, 7 S. & R. 397.

*Chas. H. Ealy,* with him *Charles F. Uhl,* for appellee. —In the interpretation of the Act of 1833, it is to be noted that inheritance is not to be decided by reference merely to the last person deceased, but is to be traced back to the person starting the line or stock: Lewis v. Gorman, 5 Pa. 164.

The word "ancestor" in its original meaning was the same as antecessor, one who goes before, precedes in the possession and not necessarily one who precedes by blood.   In our law of descent, the word "ancestor," it is well settled, differs in meaning from that used in the common law, e. g., there it was a rule that inheritances

should always lineally descend. Under our law a son may be an ancestor or predecessor in title of his father. So brothers, sisters, and other collaterals may be ancestors as used under our statutes.

While we have no decision of the higher courts of Pennsylvania upon the exact question presented here, the case of Hess v. Riegel, 4 Pa. D. & C. 233, determines the point exactly.

Opinion by Mr. Justice Simpson, November 22, 1926:

In December, 1901, William T. Geddes, being then the owner of certain real estate, deeded it to his wife, through an intermediary, without any consideration being paid for either conveyance. On April 26, 1911, the wife died intestate, leaving her husband and a daughter of theirs, to survive her. This resulted in the husband acquiring a life estate in the property, with remainder to the daughter. On June 24, 1915, the daughter died unmarried and intestate, leaving her father surviving, but no brothers or sisters, or descendants of herself or them. By section 5 of the Act of April 8, 1833, P. L. 315, 318, this vested the remainder estate in her father, unless, as appellants claim, section 9 of the same statute excluded him from acquiring it. The father died in 1924, having by his will given the property to defendant, against whom the daughter's collateral heirs ex parte materna instituted the present ejectment suit. The real question to be decided is, therefore, was the father or mother the propositus, or first purchaser, from whom the inheritable blood must spring? If the latter, plaintiffs are entitled to recover; if the former, they are not. The court below entered judgment for defendant, and plaintiffs appeal.

Notwithstanding the interesting argument of appellant's counsel to the contrary, we decide that the question at issue was determined by this court nearly eighty years ago, and the conclusion then reached has not been departed from since that time. There was thus estab-

lished a rule of property which the courts will not disturb after so considerable a lapse of time, during which the legislature in any one of its many sessions, might have changed the status, if dissatisfied with our conclusion (Bickley's Estate, 270 Pa. 101, 106) ; and this is especially so in the present instance, since the question cannot arise regarding future descents, the legislature, after the death of the daughter in 1915, having wholly abrogated the rule relied on by appellants : section 13 of the Intestate Act of June 7, 1917, P. L. 429, 438.

The limitation to the blood of the first purchaser had, in some form, been part of the common law of England from very early days. Originally, it only applied where the estate had passed by operation of law ; all other acquisitions, including those by devise or gift, being deemed purchases, and hence outside the rule : 3 Bouvier's Law Dictionary (Rawle's 3d Revision), title "Purchase" ; Black's Law Dictionary (3d ed.) title "Purchase." Judicially speaking, nothing would be gained by our now reviewing the changes made in that rule by this Province and State ; those historically interested in the subject, can readily ascertain how soon and how far we departed from it, by reading the Acts of April 19, 1794, 3 Sm. L. 143, and April 4, 1797, 3 Sm. L. 296, and the note to the earlier act (3 Sm. L. 153) which sets forth the cognate statutes of the Province, and Chief Justice KINSEY's comments on them. For present purposes, we need go no further back than the Act of 1833, supra, which was in force when the father first purchased the property, and continued so until after the death of the daughter.

The 9th section of the Act of 1833, upon which appellants rely, is as follows : "Provided also, That no person who is not of the blood of the ancestors or other relations from whom any real estate descended, or by whom it was given or devised to the intestate, shall in any of the cases before mentioned take any estate of inheritance therein, but such real estate, subject to such life

estates as may be in existence by virtue of this act, shall pass to and vest in such other persons as would be entitled by this act, if the persons not of the blood of such ancestor or other relation had never existed, or were dead at the decease of the intestate."

In Lewis v. Gorman, 5 Pa. 164 (1847), the last owner of the property there in controversy had died intestate, without issue, "seized of land which descended from his mother, who was the devisee of her father, who was himself devisee of his father, who purchased from a stranger." There, as here, plaintiff claimed under the mother, and the determination of his rights depended on the proper construction of section 9 above quoted. We said (page 166), citing Moffit v. Clark, 6 W. & S. 258, "that in a case of pure descent, in order to discover who those 'ancestors or other relations' are, it is necessary to ascend to the first purchaser—to him who first acquired the estate to his family. The maxim under our statutes, as well as at common law, is that he who claims an estate descended to an intestate, must show himself heir to him from whom it descended as perquisitor. He is the propositus, and from him the inheritable blood is to be derived. But the statute makes no distinction between estates descended and estates given or devised. They are all put in the same category, and in each we must look to those from whom it descended, or by whom it was given or devised to the intestate......It would be easy to show, on the words of our statute, that one who takes gratuitously by devise is not to be viewed as the propositus in determining the future descent of the land. To make him so, he must be a purchaser for value in the popular sense of the term......This case [Hartman's Estate, 4 Rawle 39] settles that in case of gift, by devise by a father to a child, the devisee, although at common law deemed a purchaser, and, as such, the head of a new line of descent, is not so esteemed under our statute, but we must go back to him who actually acquired the estate, and brought it into the family, in determining

who is entitled to succeed to the inheritance. It follows, that Ann Thomas, the mother of the intestate, is not the ancestor from whom the estate descended, or by whom it was given. To find him, we must go back to Peter Jones, the grandfather, if not to Thomas Jones, the great-grandfather. Between these and the plaintiff there is no consanguinity, and he is, consequently, excluded from any portion of the inheritance by the operation of the proviso of the ninth section."

Upon the foregoing point Lewis v. Gorman has never been questioned by this court; on the contrary, it has been repeatedly cited with approval, probably the latest opinion of ours being Lynch's Estate, 220 Pa. 14, 19. It is true, an irrelevant dictum in it was shown to be erroneous in Moyer and wife v. Thomas, 38 Pa. 426, 429; but that is unimportant here. It should also be noted, perhaps, that the second syllabus in Opdyke's Appeal, 49 Pa. 373, that "Where a mother takes real estate by devise from her husband, she becomes the stock of a new descent," is in direct antagonism to section 9 of the Act of 1833, and if it is to be considered as anything further than an error of the reporter (which it seems to be, since the syllabus is broader than the report), it disappears from the picture by reason of the later opinion in Kinney v. Glasgow, 53 Pa. 141, which was written by the same great jurist (Judge AGNEW) who wrote the one in Opdyke's Appeal.

The application of Lewis v. Gorman to the instant case is plain. The title to be derived from the daughter being one of "pure descent, in order to discover who is the 'ancestor or other relation' [contemplated by the statute] it is necessary to ascend to the first purchaser—to him who first acquired the estate to his family." Clearly this was the father, through whom defendant claims. The wife, to whom the property was given without consideration, cannot become the stock of a new descent, since gifts are put, by the statute, in the same class as devises and descents. Consequently appellants' con-

tention, based as it is on the proposition that the wife was such new stock, necessarily fails.

Appellants ask us, in the event of our deciding the foregoing point adversely to them, to remit the record for a trial of the question as to whether or not the wife was in fact a purchaser for a valuable consideration. This we decline to do. The stipulation which they filed of record in the court below, admits "that the land in dispute passed [from the husband to the intermediary, and from the latter to the wife] without cash or other valuable consideration, but the same was a gift from the husband to the wife." On the faith thereof, the court below heard and decided the case, and, as we review only errors alleged to be shown by the record, we cannot, without the consent of both parties, go outside that record in determining the appeal.

The judgment of the court below is affirmed.