BROWN *v.* SMITH

5-3900                                        405 S. W. 2d 249

Opinion delivered June 6, 1966
[Rehearing denied July 25, 1966.]

*Jack D. Mulvihill, John Harris Jones,* for appellant.

*Rose, Meek, House, Barron, Nash & Williamson,* for appellee.

Paul Ward, Justice. The issues presented here concern primarily the heirship to certain real property. There is little, if any, dispute over the pertinent facts involved.

Joe Mercer Bennett died in 1963 intestate and without issue. We may hereafter refer to him as the "deceased". His father, J. A. Bennett, died in 1957 and his mother, Eula Mercer Bennett, died in 1940. Mr. and Mrs. J. A. Bennett had no offspring except the deceased.

When the deceased passed away he left several parcels of real estate and considerable personal property—the personal property not being involved on this appeal.

For convenience the real estate will be referred to by "item numbers" with a brief description of each. During the administration of the deceased's estate the real

estate was converted to cash, and the sales price of each item will also be indicated.

Item No. 1. Home place, being Lot 8 Block 13—$10,-566.79. Item No. 2. Old Blythe Building—$24,568.94. Item No. 3. Bennett-Barlow Building—$6,073.65. Item No. 4. Not involved on this appeal. Item No. 5. Lot 6, Block 4—$15,635.11.

In the final distribution order in the deceased's estate the trial court made allocations of the real estate proceeds in the manner set out below.

Items No. 1 and No. 2 were given entirely to the heirs of Mrs. Eula Mercer Bennett—said heirs being referred to hereafter as the ''Mercer heirs'' who are the appellees.

Item No. 3 was given ½ to the Mercer heirs and ½ to the heirs of J. A. Bennett—referred to hereafter as the ''Bennett heirs'' who are the appellants.

Item No. 5 was given entirely to the Bennett heirs.

The Bennett heirs excepted to the court's ruling as to Items No. 1 and No. 2, and now, as appellants, prosecute this direct appeal for a reversal.

The Mercer heirs excepted to the court's ruling as to Items No. 3 and No. 5 and now, as appellees, prosecute this cross-appeal.

(direct appeal)

*Items No. 1 and No. 2.* In 1905 and 1912 J. A. Bennett (father of the deceased) purchased these parcels of land. Shortly thereafter he and his wife (Eula Mercer) deeded the property to W. D. Trotter for $1 and other good and sufficient consideration—the deed being duly recorded. A few days later Trotter and his wife, for the same recited consideration, deeded the property to Mrs. Eula S. Bennett—the mother of the deceased.

The trial court held, in effect, that upon the death of Eula in 1940 the property, subject only to her husband's courtesy right (extinguished of course when he died in 1957), descended to the deceased (her son); that her son took the property as a maternal ancestral estate, and; that therefore, at the son's death, the property ascended to the heirs of his mother (Eula Mercer Bennett).

Appellants, in an exhaustive array of authorities, urge three general reasons why they think it was error for the trial court to give all the proceeds derived from items 1 and 2 to appellees.

It is first contended, in effect, that there was no valuable consideration for the conveyance from J. A. Bennett to his wife—that in reality it was a gift to his wife. It is contended, of course, that this fact (if it be a fact) demands a reversal.

Based on the above assumed fact, appellants rely on two cases from other jurisdictions which, they say, hold in effect that the property (under the facts and circumstances of this case) must go or ascend to the purchaser for value—the person who actually acquired the property and brought it into the family, meaning the father. Under these two rulings, appellants say, the property must go to them—the heirs of J. A. Bennett. The cases relied on are *Reed* v. *Geddes* (1926) 287 Pa. 274, 135 Atl. 232, and *In Re Knight's Estate* (1943—Cal. App.), 136 P. 2d 68. We refrain from discussing these cases at length because we do not think they are decisive of the issue.

Finally, appellants make an extended and forceful argument, supported by citations from many authorities, to the effect that the issue here is controlled by "The common law tradition". It is pointed out that "The policy of the common law was to keep the real property in the line of the ancestor by whom it was brought into the family". Appellants insist that in this instance the mother should be disregarded, because she paid nothing for

the property. Hence, it is argued, it was the father who brought the property into the family and who should therefore be treated as the propositus or stock of descent.

This argument overlooks a basic characteristic of ancestral estates. Such an estate can be created only by a gift, devise, or inheritance to a person who is related *by blood* to the donor. In *Kelly's Heirs* v. *McGuire,* 15 Ark. 555, at 587, we defined a new acquisition, as distinguished from an ancestral estate, in this way: "It must be understood, however, that a new acquisition, in the sense intended by the statute, is one which the intestate has acquired by his exertions and industry . . . or by will or deed from a stranger." Of course "stranger" means a stranger to the blood, not someone that the donee did not know.

The same point was again made in *West* v. *Williams,* 15 Ark. 682, where land owned by Lewis C. Taylor had been left by his will to his wife, Elizabeth. It later passed by Elizabeth's will to her descendants and became an ancestral estate in their hands. We held specifically that the land had been a new acquisition as far as Elizabeth was concerned, saying: " . . . the estate, when in Mrs. Taylor's hands, was not an ancestral estate at all, but a new acquisition, within the definition of such estates given in the case of *Kelly et al,* v. *McGuire & wife, et al,* because she held it by devise from her husband, Lewis C. Taylor, who, so far as this record shows, was a stranger to her blood, both paternal and maternal." In the case at bar it follows that the tracts now in question were held by Eula S. Bennett as a new acquisition, because she received them from her husband, who was not related to her by blood.

Ark. Stat. Ann. § 61-110 (1947), in material part, reads:

"In cases where the intestate shall die without descendants, if the estate come by the father, then it

shall ascend to the father and his heirs; if by the mother the estate shall ascend to the mother and her heirs, . . ."

The wording of the statute is plain, its meaning is clear and it needs no explanation. It is of course true that here the decedent's estate could not go to his father or mother because they had died previously, but the statute also includes their heirs. Here there can be no question about where the estate of deceased (items 1 and 2) came from —it came from his mother.

It is our conclusion therefore that the trial court was right in holding that the proceeds should go to the heirs of the mother.

(cross appeal)

*Item No. 3.* This property was purchased by J. A. Bennett and E. E. Barlow. In 1921 J. A. Bennett conveyed his undivided ½ interest to his wife, Eula. This transaction put the property in the same category with items 1 and 2 previously awarded to the Mercer heirs. The trial court, however, gave ½ to the Bennett heirs and ½ to the Mercer heirs. Apparently the trial court took the view that J. A. Bennett owned the property or an interest therein because of the following factual situations. When the estate of Eula Bennett was administered, J. A. Bennett was the administrator. The record discloses two things: (a) J. A. Bennett personally collected and kept part of the rents from the property; (b) Later it was decided to partition the property between the Bennetts and the Barlows. Pursuant thereto J. A. Bennett and the deceased (Joe M. Bennett) executed a deed to the Barlows, and the Barlows executed a deed to J. A. Bennett and his son.

There is nothing in the above transaction which shows J. A. Bennett had or claimed any interest in the land. The rentals he drew from the property were due him as the owner of a curtesy interest in the property, and the administration proceedings so indicated.

As for the partition deed referred to above, the rule is well established that a partition deed conveys or creates no title but merely severs the unity of possession. 40 Am. Jur. p. 107, § 126 (Effect of Partition); *Hutchison* v. *Sheppard*, 225 Ark. 14, 279 S. W. 2d 33, and; *Johnson* v. *Ford,* 233 Ark. 504, 345 S. W. 2d 604. It is not contended that the deceased ever conveyed his interest to his father.

Thus it appears that the deceased (son of J. A. and Eula Bennett) inherited the property from his mother (just as he did items 1 and 2) and it, therefore, ascended, at his death, to the appellees. No part of the property ascended to the heirs of J. A. Bennett.

*Item 5.* This property was deeded by Mr. and Mrs. J. A. Bennett to their son Joe Mercer Bennett (deceased) in 1921—when Joe was sixteen or seventeen years old. The recited consideration was $1 and other valuable consideration.

The trial court ruled that all the proceeds of the property went to appellants. On cross-appeal appellees contend the trial court erred, and that one-half should have been given to appellees. We do not agree with this contention. Apparently both sides agree that if this conveyance was for a valuable consideration, then the property, upon the death of Joe, should be divided between the heirs of his father and mother. Likewise, if this was a gift or advance from father to son, the property would ascend to the heirs of the father.

We think the trial court was correct in holding the conveyance was a gift or advancement. In the case of *Holland* v. *Bonner,* 142 Ark. 214, 218 S. W. 665, we held that:

"The question as to whether or not a conveyance or transfer of money or property is regarded as a simple gift, advancement, or a sale, is to be determined by the intention of the parent. The question as

to what was the intention is generally purely one of fact to be ascertained from the circumstances of the transaction.''

In *Neal* v. *Neal,* 194 Ark. 226, 106 S. W. 2d 595, we find this statement:

''A transfer of land by a parent during his life time to a child will be presumed to constitute an advancement of a portion or the whole of that child's share in the parent's estate, where the consideration expressed is nominal, and natural love and affection.''

It occurs to us that such a presumption would especially apply here because of the age of the grantee —it seems hardly likely he would have paid full value for the land.

### (distribution order)

In the original Distribution Order the trial court required that the shares of two missing paternal heirs be held by the clerk for one year, and, if not found, their shares be distributed equally among the other Bennett heirs. It is contended this violates Ark. Stat. Ann. § 62-2911 (Supp. 1965). We see no merit in this contention. First, we do not find where appellants made any objection. Second, we do not understand how appellants can be prejudiced by the order. Third, the statute gives the court the right to make an ''ultimate Distribution'' of the funds.

The decree of the trial court is affirmed on direct appeal and modified, as indicated, on cross-appeal.