Mrs. R. J. Buck v. Clifton Brashears, et al

4685                                          433 S.W. 2d 377

Opinion Delivered November 11, 1968

*William C. Gilliam* for appellant.

*James C. Cole* for appellees.

Carleton Harris, Chief Justice.    This litigation involves the question of whether certain property constitutes an ancestral estate.    S. E. Connell and Coia Connell, his wife, acquired two parcels of property by purchase, as an estate by the entirety, one parcel being acquired in 1946, and the other in 1951.    The Connells were the parents of one son, Granville Connell.    This son was the only child, who never married, but lived with his parents and worked with them in the operation of a grocery store.    In 1957, S. E. Connell died intestate.    The wife and son continued to operate the family business.    Mrs. Connell broke her hip not too long after the death of her husband, and was thereafter unable to be active in conducting the business.

In 1965, Mrs. Connell died, leaving a will in which she named the son, Granville, as the sole devisee and legatee. The will was admitted to probate, and a settlement reflecting that Granville was the only heir and sole devisee under the will, was filed and approved by the court. In 1966, Granville Connell died, and R. J. Buck, husband of appellant herein, was appointed administrator. Thereafter, a petition for determination of heirship and lawful distribution was filed by appellees, who are the brothers and sisters, or children of deceased brothers and sisters, of Mrs. Connell. The petition asserted that the two parcels of property herein involved were an ancestral estate from the maternal bloodline, and petitioners contended that, as collateral heirs on the maternal side, they were entitled to the property[1].

Mrs. R. J. Buck, appellant herein, a sister of S. E. Connell, contends that the properties involved are new acquisitions and should pass ½ to the appellees as heirs of Coia Connell and ½ to appellant as the heir of S. E. Connell. On trial, the court entered its order determining heirship and authorizing distribution, and held, as to both of these parcels of property, that they were maternal ancestral real estate and should be distributed to appellees alone. From the order so entered, appellant brings this appeal. For reversal, it is first asserted that the real estate is neither a maternal nor a paternal ancestral estate.

Appellant contends that since this real estate was acquired as an estate by the entirety, both husband and wife owned same and each was equally responsible for bringing the property into the family. It is argued that there is no reason to favor either the heirs of the mother or the heirs of the father. From her brief:

[1] The petition likewise asserts that at the time of his death, Granville Connell owned real estate which was an ancestral estate from the paternal side, "and which this court has already vested in the bloodline on the paternal side."

"An estate by the entirety is unique and should be treated differently than the regular fee simple estate. In the creation of an estate by the entirety the ownership of both husband and wife occurs at precisely the same instant. Both are equally responsible, under the law, for bringing property into the family line and the heirs of both should be considered as sharing equally in the property, regardless of whether the husband dies first or the wife dies first."

Appellant says there is no precedent in this state for the situation involved herein; that it is only logical and equitable that this court hold that this is not a pure paternal or maternal ancestral estate, but since it contains ingredients of both types of ancestral estates, it should pass ½ to the heirs of the father, and ½ to the heirs of the mother, "preserving the integrity of the original way in which the property was brought into the family equally by both father and mother." There is perhaps something to be said for appellant's argument when viewed from her standpoint, but we think the law is contrary to the position taken. As far as these particular facts are concerned, this is a case of first impression, but the case of *Brown* v. *Smith,* 240 Ark. 1042, 405 S.W. 2d 249 (1966) bears a close similarity, and the reasoning in that case is, we think, applicable here. There, J. A. Bennett and Eula Mercer Bennett, husband and wife, were the parents of one son, Joe Mercer Bennett. J. A. Bennett purchased two parcels of land. Shortly after the purchase, Bennett deeded the property to W. D. Trotter for $1.00 and other good and sufficient consideration, Eula Mercer Bennett relinquishing dower and homestead rights. Two days after receiving the deed, Trotter and wife, for the same recited consideration, deeded the property to Eula Mercer Bennett. Eula Mercer Bennett died in 1940, and J. A. Bennett died in 1957. The son, Joe Mercer Bennett, died in 1963 intestate and without issue. The same question presented in the instant litigation arose

at that time, *i.e.,* the collateral heirs of both J. A. Bennett and Eula Mercer Bennett made claim to the property. From the opinion:

> "The trial court held, in effect, that upon the death of Eula in 1940 the property, subject only to her husband's curtesy right (extinguished of course when he died in 1957), descended to the deceased (her son); that her son took the property as a maternal ancestral estate, and; that therefore, at the son's death, the property ascended to the heirs of his mother (Eula Mercer Bennett)."

Appellants urged that this was error, contending that there was no valuable consideration for the conveyance from J. A. Bennett to his wife; that in reality it was a gift to the wife[2]. This court said:

> "Finally, appellants make an extended and forceful argument, supported by citations from many authorities, to the effect that the issue here is controlled by 'The common law tradition.' It is pointed out that 'The policy of the common law was to keep the real property in the line of the ancestor by whom it was brought into the family.' Appellants insist that in this instance the mother should be disregarded, because she paid nothing for the property. Hence, it is argued, it was the father who brought the property into the family and who should therefore be treated as the propositus or stock of descent.

> "This argument overlooks a basic characteristic of ancestral estates. Such an estate can be treated only by a gift, devise, or inheritance to a

---

[2]Of course, the conveyance itself was from Trotter and wife to Eula Mercer Bennett, but apparently all parties agreed that the conveyances from Bennett to Trotter, and Trotter back to Eula Mercer Bennett were made for the purpose of giving Mrs. Bennett the title to the property. In other words, Trotter was simply a "straw man."

person who is related *by blood* to the donor.''

After quoting some earlier cases, the court stated:

'' \* \* \* In the case at bar it follows that the tracts now in question were held by Eula S. Bennett as a new acquisition, because she received them from her husband, who was not related to her by blood.''

One thing is certain: Irrespective of when the title to the properties vested in Mrs. Connell, the acquiring of such properties was, legally speaking, a new acquisition[3] —because she was not related by blood to either the grantors or her husband. It is thus apparent that the involved properties were new acquisitions as to the mother, but ancestral property as to the son, Granville.

Appellant also contends that this is not an ancestral estate, because it is essential that there be no consideration other than that of blood in the descent of the property. This statement of the law is correct. *Martin v. Martin*, 98 Ark. 93, 135 S.W. 348. Appellant states in her brief:

''The devise of these two tracts of real estate was not gratuitous, as the stipulations and evidence introduced clearly showed that Granville Connell worked side by side with his father and mother in acquiring and holding everything which they had during their life time, including the two (2) tracts in question. His labor and industriousness contributed as much to the family fortune as that of any other of the two members of the family.''

---

[3]In other words, the result is the same if (1) Mrs. Connell became an owner and possessor **per tout** at the time of the conveyances to her and Mr. Connell, his like interest being terminated upon death—or (2) if Mrs. Connell had an undivided interest (or even only a half interest) in the properties until Mr. Connell's death, and absolute title vested in her at that time.

In other words, appellant asserts that Granville Connell already held equitable title to the properties at issue. Income tax returns and leases were introduced as a matter of endeavoring to strengthen this argument. There are more answers than one to appellant's contention, but it is unnecessary to discuss them here, for there is nothing in the record which shows that Granville became owner of the tracts in any manner, or for any reason, other than as a gift. The will of Mrs. Connell recites, "I give, devise and bequeath to my son * * *." Although several witnesses testified for appellant, no one said that either Mr. or Mrs. Connell ever made any remarks indicating that their son was part owner of the properties (nor, for that matter, was there any evidence that Granville ever told anyone before the death of either parent that he was part owner). In fact, the settlement of his father's estate reflects that Mrs. Connell was the owner of these tracts, and Granville approved the settlement. Likewise, the final settlement of Mrs. Connell's estate reflects, and the order of distribution find, that Granville was the only heir at law, and the sole devisee under the will of Mrs. Connell; that he was entitled to receive these particular properties (along with others) as the sole heir of the decedent.

The court did not commit error.

Affirmed.